SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**PAUL T. MALONEY, OSB #013366**
Assistant United States Attorney
Paul.Maloney@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:24-cr-00392-AB-01** |
| **v.** | **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS** |
| **ENRIQUE SALCEDO DURON,** | |
| **Defendant**. | |

**Government's Response to Defendant's Motion to Suppress**

**TABLE OF CONTENTS**

I.    FACTUAL SUMMARY ....................................................................................... 2

   A.    Information Prior to the Traffic Stop ............................................................. 2

   B.    Investigators Stop and Sweep the Abandoned Semi-Truck ............................... 4

   C.    Initial Semi-truck Sweep and Salcedo Duron Detained ..................................... 5

   D.    Search Warrant Application and Subsequent Search .......................................... 6

   E.    Motion to Suppress ...................................................................................... 7

II.   LAW AND ARGUMENT ................................................................................ 8

   A.    There was Reasonable Suspicion to Stop the Semi-truck and Probable Cause to Search the Semi-truck for Evidence of Narcotics Trafficking. ..................................... 8

     1.    Before Sweeping the Semi-Truck at the Rest Stop, Investigators had Reasonable Suspicion and Probable Cause that the Semi-truck was Involved in Drug Trafficking..11

     2.    After Sweeping the Semi-truck, Additional Facts Gathered at the Rest Stop Added to Investigator's Probable Cause .............................................................. 13

   B.    Investigators' Seizures Resulted from a Lawful Search ..................................... 16

     1.    Automobile Exception ........................................................................... 16

     2.    Investigators Lawfully Seized Evidence of Narcotics Trafficking Pursuant to the Mobile Vehicle Exception and Subsequent Search Warrant ............................. 19

     3.    Investigators' Initial Sweep and Subsequent Search of the Abandoned Semi-Truck was Reasonable ................................................................................ 20

     4.    Good Faith Exception and Inevitable Discovery ............................................ 22

III.  RESPONSE TO DEFENDANT'S MOTION FOR A FRANKS HEARING ................... 25

   A.    Defendant's Claimed Omissions Are Not Exculpatory. ..................................... 25

   B.    Defendant's Challenged Omissions Are Not Material to the Probable Cause Determination. ............................................................................................. 29

IV.  CONCLUSION................................................................................................ 30

i

**TABLE OF AUTHORITIES**

Cases                                                                          Page(s)

*Abel v. United States*, 362 U.S. 217 (1960) .................................................. 20

*Cady v. Dombrowski*, 413 U.S. 433 (1973) ................................................... 22

*Coolidge v. New Hampshire,* 403 U.S. 443 (1971) ...................................... 19

*Davis v. United States*, 564 U.S. 229 (2011) ................................................ 23

*Franks v. Delaware*, 438 U.S. 154 (1978) ............................... 25, 26, 27, 28

*Herring v. United States*, 555 U.S. 135 (2009) ..................................... 22, 23

*Hudson v. Michigan*, 547 U.S. 586 (2006) .................................................. 23

*Illinois v. Wardlow*, 528 U.S. 119 (2000) ...................................................... 8

*Kaley v. United States*, 571 U.S. 320 (2014). ............................................. 16

*Katz v. United States*, 389 U.S. 347 (1967) ................................................. 20

*Nix v. Williams*, 467 U.S. 431 (1984) .................................................... 23, 24

*Pennsylvania v. Labron*, 518 U.S. 938 (1996) ............................................ 16

*Pennsylvania v. Mimms,* 434 U.S. 106 (1977) ............................................ 15

*Rakas v. Illinois*, 439 U.S. 128 (1978) ........................................................ 20

*Terry v. Ohio*, 392 U.S. 1 (1968) ................................................................... 8

*United States v. Abdelhadi*, 64 F. App'x 623 (9th Cir. 2003) .................... 10

ii

*United States v. Arvizu*, 534 U.S. 266 (2002) ........................................................ 8

*United States v. Baker*, 58 F.4th 1109 (9th Cir. 2023) .................................. 20, 21

*United States v. Boatwright*, 822 F.2d 862 (9th Cir. 1987) ............................... 24

*United States v. Butcher*, 926 F.2d 811 (9th Cir. 1991) ................................... 15

*United States v. Cervantes*, 703 F.3d 1135 (9th Cir. 2012) .............................. 22

*United States v. Chavez-Miranda*, 306 F.3d 973 (9th Cir. 2002) ...................... 26

*United States v. Craighead*, 539 F.3d 1073 (9th Cir. 2008) ................. 26, 28, 29

*United States v. Davis*, 530 F.3d 1069 (9th Cir. 2008) ..................................... 16

*United States v. DiCesare*, 765 F.2d 890 (9th Cir.)

    *amended*, 777 F.2d 543 (1985) .................................................................... 28

*United States v. Erickson*, 18 F. App'x 589 (9th Cir. 2001) .............................. 10

*United States v. Flyer*, 633 F.3d 911 (9th Cir. 2011) ....................................... 26

*United States v. Foster*, 711 F.2d 871 (9th Cir. 1983) ...................................... 26

*United States v. Furrow*, 229 F.3d 805 (9th Cir. 2000) ..................................... 27

*United States v. Guerrero*, 47 F.4th 984 (9th Cir.),

    *amended on denial of reh'g*, 50 F.4th 1291 (9th Cir. 2022), and

    *cert. denied*, 215 L. Ed. 2d 82 S. Ct. 838 (2023) (J. Gould, concurring) .......... 17

*United States v. Hammett*, 236 F.3d 1054 (9th Cir. 2001) ................................. 28

*United States v. Huffhines,* 967 F.2d 314 (9th Cir. 1992) .................................. 20

*United States v. Hylton*, 30 F.4th 842 (9th Cir. 2022) 9

*United States v. Johnson*, 256 F.3d 895 (9th Cir. 2001) (en banc) 27

*United States v. Kyllo*, 37 F.3d 526 (9th Cir. 1994)

    *rev'd on other grounds*, 530 U.S. 1305 (2001) 26

*United States v. Leon*, 468 U.S. 897 (1984) 22, 29

*United States v. Lingenfelter*, 997 F.2d 632 (9th Cir. 1993) 27

*United States v. Lopez-Lopez*, 230 F.3d 1368, *1 (9th Cir. 2000) (unpublished) 10

*United States v. Luk*, 859 F.2d 667 (9th Cir. 1988) 22

*United States v. Meek*, 366 F.3d 705 (9th Cir. 2004) 25

*United States v. Michaelian*, 803 F.2d 1042 (9th Cir. 1986) 22

*United States v. Nault*, 41 F.4th at 1079 (9th Cir. 2022) 9

*United States v. Nordling,* 804 F.2d 1466, 1469 (9th Cir. 1986) 20, 21

*United States v. Perez*, 37 F.3d 510 (9th Cir.1994) 9, 10

*United States v. Ramirez*, 473 F.3d 1026 (9th Cir. 2007) 23

*United States v. Ramirez-Sandoval*, 872 F.2d 1392 (9th Cir. 1989) 23, 24

*United States v. Rojas-Millan*, 234 F.3d 464 (9th Cir. 2000) 10

*United States v. Ruddell*, 71 F.3d 331 (9th Cir. 1995) 27

*United States v. Schaefer*, 2019 WL 267711, *9  (D. Or. Jan. 17, 2019) 26, 27

*United States v. Scott*, 705 F.3d 410 (9th Cir. 2012) ............................................................16

*United States v. Sharpe*, 470 U.S. 675 (1985) ....................................................................8, 9

*United States v. Simon*, 767 F.2d 524 (8th Cir. 1985) ..........................................................15

*United States v. Steinman*, 159 F.4th 550 (9th Cir. 2025) ...............................................*passim*

*United States v. Taylor*, 60 F.4th 1233 (9th Cir. 2023) .......................................................9, 11

*United States v. Torres-Sanchez*, 83 F.3d 1123 (9th Cir. 1996)

    *as amended* (July 15, 1996) ...........................................................................................9, 15

*United States v. Valdes-Vega*, 738 F.3d 1074 (9th Cir. 2013) .............................................8, 9

*United States v. Vasquez*, 654 F.3d 880 (9th Cir. 2011) ......................................................29

On September 13, 2024, DEA task force investigators followed a semi-truck from a drug deal in Aurora, Oregon to the French Prairie, Oregon rest stop along northbound I-5. They found the parked truck running with the keys in the ignition. The cab was empty and the truck appeared abandoned in the parking lot. Having probable cause to search the abandoned vehicle, investigators swept the cab of the truck for occupants and dangerous items. Investigators found suitcases containing bulk quantities of what appeared to be narcotics inside suitcases. Investigators stopped their sweep and applied for a warrant to search the entire truck. A manhunt ensued with investigators searching for the occupants of the semi-truck. Defendant and his passenger were found hiding in the brush some distance from the truck. Investigators obtained a warrant and lawfully searched the cab and trailer where they seized 102,119.6 gross grams methamphetamine concealed inside suitcases stored in the cab of the semi-truck.

In his motion to suppress (ECF No. 71), defendant seeks to suppress the evidence seized from the semi-truck and his post-arrest statements because defendant claims investigators' warrantless searches of the semi-truck were without probable cause in violation of the Fourth Amendment to the U.S. Constitution. Defendant further contests the validity of the search warrant contending that the affiant made material omissions that if included, would have affected the magistrate's probable cause determination.

Defendant's motion should be denied because from the moment investigators stopped the semi-truck, they had probable cause to search the mobile – and still-running – vehicle for evidence of narcotics trafficking. The investigators' cautious choice to seek a search warrant, and any defects in the warrant application or execution, did not preclude their authority to search the semi-truck pursuant to the automobile exception. Furthermore, the agents were acting in good faith to search for evidence that would have inevitably been discovered. Finally, defendant's

**Government's Response to Defendant's Motion to Suppress**          **Page 1**

claims that Special Agent Shannahan omitted material facts to deliberately mislead the magistrate are meritless because the omissions are incriminating and therefore not material.

## I.    FACTUAL SUMMARY[1]

### A.    Information Prior to the Traffic Stop

In the Summer and Fall of 2024, Investigators from the DEA, Tigard Police Department, Washington County Sheriff's Office, and Sherwood Police Department assigned to DEA Task Force D-51 were investigating a Mexico-based drug trafficking organization operating in Oregon, Washington, California, and Mexico. Information obtained through a confidential source (CS-1) indicated that the organization imported methamphetamine, cocaine, heroin, and fentanyl from Mexico into the United States through ports of entry along the U.S.–Mexico border. (Search Warrant affidavit, ¶ 7).

During August 2024, CS-1 reported information to investigators about a Portland area narcotics distributor who was distributing methamphetamine to customers in Oregon and Washington. Investigators later identified this individual as Carlos Perez-Lopez.[2] CS-1 informed investigators that communications with Perez-Lopez could be conducted through consensually recorded telephone calls. Under investigator's direction, CS-1 engaged in recorded communications with Perez-Lopez and arranged multiple controlled purchases of

---

[1] The government submits DEA Special Agent Corey Shannahan's Search Warrant Application ("Search Warrant affidavit," Government Exhibit #1), the affidavit in support of the Criminal Complaint filed in U.S. District Court of Oregon Case No.: 3:24-mj-198 (Government Exhibit #2), pertinent portions of the investigators WhatsApp Chat history ("WhatsApp Chat," as Government Exhibit #3); WIN D-51 WhatsApp Chat history ("WIN D-51 Chat" as Government Exhibit #4):Agent Shannahan's DEA-6 report ("Shannahan Report," as Government Exhibit #5), and DEA Task Force Officer Joshua Betonte DEA-6 Report (Betonte Report," as Government Exhibit #6), and the Semi-Truck Search Warrant (Government Exhibit #7).

[2] Investigators initially referred to Perez-Lopez as Jose Izquierdo, the Camry's registered owner per DMV records.

**Government's Response to Defendant's Motion to Suppress**                    **Page 2**

methamphetamine. During those controlled purchases, investigators observed Perez-Lopez driving a Toyota Camry bearing Oregon license plate 440NSR. (*Id.* ¶ 8). Through prior physical and electronic surveillance, investigators identified Perez-Lopez's vehicle as a dark gray Toyota Camry with Oregon license plate 440NSR. On August 30, 2024, investigators obtained a warrant signed by U.S. Magistrate Judge Jolie A. Russo (filed in 3:24-mc-900) authorizing installation of a tracking device on Camry. The device was installed in early September 2024, and investigators were monitoring the vehicle on September 13, 2024. (*Id.* ¶ 9).

In the days leading up to and on September 13, 2024, CS-1 engaged in consensually recorded conversations with Perez-Lopez using Perez-Lopez' phone. During those conversations, Perez-Lopez indicated that "something good was going to happen" and requested to meet with CS-1 in person later that day. (*Id.* ¶ 10).

On September 13, 2024, after learning of the conversation with CS-1, investigators sought to locate and surveil Perez-Lopez and actively tracked the location of the Toyota Camry. (*Id.* ¶ 11). At approximately 1:30 p.m. on September 13, 2024, investigators observed Perez-Lopez enter the driver's side of the Camry and drive away. Investigators followed the vehicle as it left the Portland area. At approximately 2:45 p.m., investigators observed the Camry traveling southbound on Interstate 5 toward Salem, Oregon. (*Id.* ¶ 12).

At approximately 3:40 p.m. on September 13, 2024, investigators observed Perez-Lopez park the Camry at a truck stop near Aurora, Oregon, and meet with two Hispanic males near a blue semi-truck. Investigators observed Perez-Lopez remain near the semi-truck for approximately five minutes before departing. Investigators then observed him continue northbound on Interstate 5 in the Camry. (*Id.* ¶ 13).

**Government's Response to Defendant's Motion to Suppress**                    **Page 3**

Investigators followed the Camry as it traveled north in Wilsonville, Oregon. They conducted a traffic stop on Interstate 5 North near Carmen Drive in Tigard, Oregon. Perez-Lopez was detained, and a drug-detection canine was deployed around the Camry. The canine handler reported that the canine alerted to the presence of narcotics. Investigators then searched the mobile vehicle. (*Id.* ¶ 15). During the search of the Camry, investigators opened the trunk and located a large black trash bag containing multiple sealed packages of a crystalline substance believed to be methamphetamine. Investigators also located a heavily plastic-wrapped black bag containing blue pills believed to be counterfeit oxycodone pills containing fentanyl. (*Id.* ¶ 16).

Investigators identified Perez-Lopez as Carlos Perez-Lopez using an Oregon driver's license found in his possession. Investigators advised him of his Miranda rights and attempted to interview him. He declined to answer questions beyond saying that his friend placed the bag into the car. (*Id.* ¶ 17, Shannahan Report, ¶ 10).

Investigators who had been following the semi-truck from the earlier meeting observed it pull into a public rest area along northbound Interstate 5 near Wilsonville, Oregon, and park shortly after the traffic stop of the Camry. (*Id.* ¶ 19).

### B.     Investigators Stop and Sweep the Abandoned Semi-Truck

At 3:56:21 PM, Agent Shannahan communicated to other investigators in a team WhatsApp chat, "Semi leaving lot." (WhatsApp Chat, p. 2).

Agent Shannahan followed the semi-truck northbound on Interstate 5 for approximately three miles when the truck turned off the freeway and park at the French Prairie rest stop. According to Google Maps (screen capture below), this is a distance of 3.4 miles that takes approximately nine minutes to drive:

**Government's Response to Defendant's Motion to Suppress**                     **Page 4**



### C.      Initial Semi-truck Sweep and Salcedo Duron Detained

At approximately 4:20 p.m. on September 13, 2024, investigators parked police vehicles around the semi-truck, activated emergency lights, and approached while wearing tactical gear marked "Police." (*Id.* ¶ 20). Investigators observed that the semi-truck's engine was running. Due to tinted windows, they were unable to see inside the semi-truck. Investigators announced their presence in English and Spanish and ordered any occupants to open the door. After receiving no response, investigators opened the unlocked doors, searched the cab, found no occupants, exited the vehicle, and secured it pending a search warrant application. (*Id.* ¶ 21).

During this initial sweep of the semi-truck, investigators observed several large suitcases in the sleeper portion of the truck. The suitcases were heavily weighted. Investigators inspected the contents and saw what appeared to be numerous multi-kilogram sized pages of drugs. Investigators searched the area surrounding the rest stop and located two Hispanic males hiding in brush less than one mile from the rest stop. Investigators observed that one of the men was

**Government's Response to Defendant's Motion to Suppress**                    **Page 5**

wearing the same clothing as a man previously observed meeting with Perez-Lopez near the target vehicle at the truck stop earlier that day. (*Id.* ¶ 22).

After detaining defendant, Special Agent John Ludwig advised him of his Miranda warnings in Spanish. (Betonte Report, ¶ 1). Defendant agreed to speak to investigators and told them that he was the driver of the semi-truck and that the other man investigators had detained was a mechanic. (*Id.*) Defendant said he was taking a load of strawberries to Chicago, IL. (*Id.*) When asked about the contents of the suitcases in the cab, defendant stated the suitcases contained drugs. (*Id.*) He said that two men in Los Angeles had loaded them into the truck at the direction of a boss in Mexico. (*Id.*).

**D.    Search Warrant Application and Subsequent Search**

While these events were unfolding at the rest stop, Special Agent Shannahan was preparing a search warrant for the semi-truck. U.S. Magistrate Judge Jeffrey Armistead telephonically swore Agent Shannahan to the application and affidavit at approximately 8:00 p.m. Agent Shannahan will testify that at the conclusion of the phone call he expected that Judge Armistead would forward the signed warrant to search the semi-truck imminently. At 7:58:37, Agent Shannahan communicated to the other investigators, "2warrant sworn[,]" indicating that he had telephonically sworn to the search warrant affidavit. (WIN D51 Chat, p. 5).

Shortly thereafter, investigators commenced to search the semi-truck and seized 102,119.6 gross grams of methamphetamine concealed in the suitcases in the cab of the semi-truck.  Investigators arrested defendant and a warrant issued by a complaint filed in the U.S. District Court of Oregon charging defendant with possession with intent to distribute and conspiracy to distribute 500 or more grams of a substance containing methamphetamine in

**Government's Response to Defendant's Motion to Suppress**                    **Page 6**

violation of Title 21, United States Code Sections 841(a)(1), (b)(1)(A)(viii), and 846 (filed in 3:24-mj-198).

On October 9, 2024, a grand jury in Portland Oregon returned a single count indictment alleging defendant unlawfully possessed with intent to distribute 500 grams or more of methamphetamine in violation of Title 21 United States Code, Section 841(a)(1), (b)(1)(A)(viii). (ECF No. 22). Defendant has pled not guilty. A trial is set for October 12, 2026.

### E.    Motion to Suppress

On June 18, 2026, defendant filed a motion to suppress all evidence obtained from the stop and search of his person and semi-truck on September 13, 2024. Defendant contends the stop and search violated his Fourth Amendment rights because 1) the investigators lacked probable cause to stop and search the semi-truck; 2) his statements were fruits of the unlawful search of the semi-truck; 3) the subsequent search warrant was tainted by the prior unlawful search; and 4) the search warrant affidavit contained material misrepresentations.

Defendant's claims fail. Through their investigation and observations that day, investigators had gathered sufficient facts to conclude there was a fair probability that the mobile vehicle defendant had abandoned at a rest stop contained evidence of narcotics trafficking. The facts of the investigation, their observations from earlier in the day, along with Agent Shannahan's significant training and experience with narcotics investigations, including known drug trafficker tradecraft in transporting drugs not only supported reasonable suspicion to stop the truck, but also probable cause to search the vehicle. That investigators opted to pursue a search warrant did not preclude their ability to search the semi-truck pursuant to the mobile vehicle exception.

**Government's Response to Defendant's Motion to Suppress**                    **Page 7**

Investigators did not act unlawfully, nor did they exploit any illegality during this investigation. The facts demonstrate that investigators acted in good faith to search and seize evidence pursuant to a warrant that they believed had been, and inevitably was, issued. Defendant's motion should be denied.

## II.    LAW AND ARGUMENT

### A.  There was Reasonable Suspicion to Stop the Semi-truck and Probable Cause to Search the Semi-truck for Evidence of Narcotics Trafficking.

The Fourth Amendment is not, of course, a guarantee against all searches and seizures, but only against unreasonable searches and seizures. *United States v. Sharpe*, 470 U.S. 675, 681 (1985). Officers need reasonable suspicion to stop an individual. *Terry v. Ohio*, 392 U.S. 1 (1968). "The reasonable-suspicion standard is not a particularly high threshold to reach." *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013). "The likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu*, 534 U.S. 266, 274 (2002). A "minimal level of objective justification" based on more than an "inchoate and unparticularized suspicion or hunch" is all that is required. *Illinois v. Wardlow*, 528 U.S. 119, 123-24 (2000) (quotation marks omitted) (describing reasonable suspicion for making a Terry stop).

When reviewing an officer's reasonable suspicion, courts are instructed to look at the "totality of the circumstances." *Arvizu*, at 273. While the suspect's acts were "perhaps innocent in itself…taken together they [may] warrant [ ] further investigation." *Id*. at 274. "A determination that reasonable suspicion exits…need not rule out the possibility of innocent conduct." *Id*. at 277. "A series of innocent acts may be enough for reasonable suspicion justifying an investigatory stop, even though the circumstances amount to far less than probable

**Government's Response to Defendant's Motion to Suppress**                    **Page 8**

cause." *Valdes-Vegas*, 738 F.3d at 1080. The threshold for reasonable suspicion is "lenient" *United States v. Steinman*, 159 F.4th 550, 567 (9th Cir. 2025).

An investigation under reasonable suspicion must be pursued through means likely to confirm or dispel suspicions quickly. *United States v. Torres-Sanchez*, 83 F.3d 1123, 1129 (9th Cir. 1996), *as amended* (July 15, 1996)) (citing *United States v. Sharpe*, 470 U.S. 675, 686 (1985)). Permissible investigation includes asking questions related to the suspicion and asking more questions when the answers heighten or do not dispel suspicions. *Id*.

When stopping a vehicle, an officer may conduct checks with a close connection to roadway safety even if those checks were not the purpose of the stop. *Id*. at 1080. These "ordinary inquiries" include checking the driver's license, checking for outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. *Id*. at 1078; *see also Steinman*, 159 F.4th at 561; *United States v. Taylor*, 60 F.4th 1233 (9th Cir. 2023) (basic questions about why a driver was stopped and whether he had identification, had been arrested before, or had weapons are permissibly mission-central); *United States v. Hylton*, 30 F.4th 842 (9th Cir. 2022) (criminal history check during traffic stop "stems from the mission of the stop itself" and does not require independent reasonable suspicion to comport with the Fourth Amendment). Such routine checks are "an integral component of—rather than a prolongation of—the vehicle stop" because they help ensure that vehicles on the roadway are operated safely and responsibly. *United States v. Nault*, 41 F.4th at 1079.

Furthermore, officers may broaden their line of questioning if they notice additional suspicious factors during the stop. *United States v. Perez*, 37 F.3d 510, 513 (9th Cir.1994). Reasonable suspicion is formed by specific, articulable facts which, together with objective and

**Government's Response to Defendant's Motion to Suppress**        **Page 9**

reasonable inferences, form a basis for suspecting that the particular person detained is engaged in criminal activity. *United States v. Rojas-Millan*, 234 F.3d 464, 468-69 (9th Cir. 2000).

Factors that help support reasonable suspicion that a vehicle contains drugs include the smell of perfume or air freshener emanating from the vehicle. *Rojas-Millan*, 234 F.3d at 470; see also *United States v. Erickson*, 18 F. App'x 589, 591 (9th Cir. 2001); *United States v. Lopez-Lopez*, 230 F.3d 1368, *1 (9th Cir. 2000) (unpublished). Vague responses to questioning. *Rojas-Millan*, 234 F.3d at 470. Evasive answers. *United States v. Steinman*, 159 F.4th at 569. A long drive for a short visit. *Rojas-Millan*, 234 F.3d at 470. Nervous behavior. *Perez*, 37 F.3d at 514. A driver who is not the vehicle's registered owner. *Id*.; see also *United States v. Abdelhadi*, 64 F. App'x 623 (9th Cir. 2003). A car's association with a known drug hub. *Perez*, 37 F.3d at 514. Inconsistencies between the person's responses and the officer's observations or knowledge. *Id*.; *Steinman*, 159 F.4th at 569. State license plate numerals combined with the officer's observation of registration sticker dates that indicate licensing anomalies. *Rojas-Millan*, 234 F.3d at 467, 469. Reasonable suspicion based on a combination of such factors will justify the brief continued detention of a vehicle between the time the traffic-based mission ends and consent to search is requested. *Rojas-Millan*, 234 F.3d at 470.

The stopping officer's "subjective motivations are irrelevant because the Fourth Amendment's concern with reasonableness allows certain actions to be taken, whatever the subjective intent." *Steinman*, 159 F. 4th at 565. (internal punctuation omitted).

**Government's Response to Defendant's Motion to Suppress**                    **Page 10**

       ***1.      Before Sweeping the Semi-Truck at the Rest Stop, Investigators had Reasonable Suspicion and Probable Cause that the Semi-truck was Involved in Drug Trafficking.***

Here, the stop and initial sweep of the semi-truck occurred in close temporal proximity. The investigators had both reasonable suspicion and probable cause that the occupants of the semi-truck had been involved in a drug transaction with Perez-Lopez at the truck stop. *See e.g.*, *Taylor*, 60 F.4th at 1241-42 (noting dual grounds for finding the stop lawful).

Before Investigators stopped and swept the semi-truck, the following facts supported reasonable suspicion and probable cause that the abandoned truck was involved in drug trafficking:

- Investigators had purchased drugs from Perez-Lopez during two separate controlled purchases arranged with a confidential informant (CS-1);
- In both controlled purchases, Perez-Lopez drove the Camry to the agreed upon deal locations;
- Investigators were lawfully tracking Perez-Lopez's Camry pursuant to a federal tracking warrant;
- On the day of the seizure, and before driving south towards the Aurora truck stop, Perez-Lopez spoke with an informant who was posing as a prospective drug customer who had purchased drugs from Perez-Lopez in the earlier two controlled purchases. Perez-Lopez indicated to the informant that "something good was going to happen;"  The informant and investigators understood this statement to mean that Perez-Lopez would be receiving a distributable quantity of drugs.
- Perez-Lopez indicated he wanted to meet with the informant later that evening, which the investigators believed would lead to Perez-Lopez selling drugs to the informant;
- Perez-Lopez drove south on I-5, which Agent Shannahan believed to indicate Perez-Lopez was driving to a meeting with a narcotics source of supply;
- Investigators observed the Camry drive to the back of the TA Travel Center truck stop lot in Aurora Oregon. The Camry was driving in a area reserved for semi-truck parking. Investigators found this suspicious because this area of the lot was out of way, exclusively used for semi-truck parking, and provided a measure of concealment;
- Investigators watched Perez-Lopez park near the blue semi-truck, exit the Camry and interact briefly with two Hispanic males near the truck. Agent Shannahan

**Government's Response to Defendant's Motion to Suppress**             **Page 11**

knows that these brief meetings are part of narcotics traffickers' tradecraft, that narcotics transactions often occur quickly and in a manner to conceal the distribution from law enforcement detection;

- After this brief meeting Perez-Lopez, drove northbound on I-5 towards Portland, which Agent Shannahan believed indicated Perez-Lopez had just completed a drug transaction at the truck stop;

- A drug detecting canine alerted to the presence of drugs in Perez-Lopez's Camry;

- Investigators seized 820.4 gross grams of fentanyl and 20,713.5 gross grams of methamphetamine from a bag inside Perez-Lopez's trunk;

- Perez-Lopez told investigators that a friend had put the bag in his car and he didn't know what the bag contained;

- The blue semi-truck displayed multiple license plates including a Mexico license plate and a recently issued Texas temporary tag which based on Agent Shannahan's training and experience are indicators of possible truck trafficking associations;

- The semi-truck was registered to a business near the southern U.S. border, a known narcotics trafficking hub;

- The truck traveled only a short a distance from the truck stop where it had been stopped to the rest stop, which Agent Shannahan found inconsistent with interstate long-haul practices;

- The semi-truck pulled into the rest stop shortly after and in close temporal proximity to investigators stopping Perez-Lopez. Investigators reasonably believed the blue semi-truck's quick stop indicated the semi-truck's driver had knowledge that Perez-Lopez had been stopped by law enforcement;

- Defendant drove, parked, and fled the semi-truck in manner to distance himself from the incriminating evidence inside;

- Defendant left the truck running with the keys in the vehicle, abandoning his only ability to exercise dominion and control over the semi-truck and its valuable contents;

All these facts amounted to reasonable suspicion, and probable cause, for narcotics trafficking.

Agent Shannahan and the other task force investigators were not acting upon a "mere hunch" but rather "specific, articulable facts, which when considered with objective and reasonable inferences formed a basis for *particularized* suspicion." *Steinman*, 159 F.4th at 566 (emphasis original) (citations and punctuation omitted). All these facts came before defendant was found hiding nearby and admitted to investigators that he had drugs in the semi-truck.

**Government's Response to Defendant's Motion to Suppress**                    **Page 12**

When viewed through the lens of the Agent Shannahan's extensive training and experience in narcotics investigations these facts indicate that the two men associated to the blue semi-truck were involved in narcotics trafficking with Perez-Lopez. The two men had just met briefly at the TA Truckstop with Perez-Lopez, a known narcotics trafficker who had used the same Camry to distribute drugs to an informant. Perez-Lopez had recently communicated to the informant that Perez-Lopez was about to receive a drug shipment, and made arrangements to meet the informant later that day for a drug deal.

Investigators confirmed Perez-Lopez was in fact in possession of drugs directly after meeting with defendant. Perez-Lopez claimed that a third party put a bag in his car, and that he did not know what was inside the bag. Minutes after investigators had stopped Perez-Lopez, the semi-truck left the truck stop, traveled approximately three miles and pulled into a rest stop where defendant and his passenger left the truck unattended, running, with the keys in the ignition. These facts support a "fair probability" that the semi-truck contained evidence of narcotics trafficking, therefore investigators initial sweep of the truck was lawful.

### 2.    *After Sweeping the Semi-truck, Additional Facts Gathered at the Rest Stop Added to Investigator's Probable Cause*

After sweeping the semi-truck and finding it unattended, running, with the keys in the ignition, investigators prudently swept the interior of the vehicle looking for occupants, and dangerous items.  The semi-truck's cab included a sleeping compartment capable of concealing people in the back. In that process, investigators found heavily weighted suitcases in the cab's sleeping compartment. Investigators inspected the contents of one of the suitcases. Investigators found, *but did not seize*, multiple packages wrapped in plastic consistent with kilogram packages of narcotics.

**Government's Response to Defendant's Motion to Suppress**                    **Page 13**

Investigators stopped the sweep and secured the cab of the semi-truck. They then began a manhunt to find the two men they had previously seen with the semi-truck at the TA Truckstop. Witnesses told investigators two men left the truck. Canine units were deployed to help with the effort. Investigator found defendant hiding nearby and detained him, Investigators advised him of his Miranda warnings and conducted a field interview. These questions were mission-central questions and focused on the ownership and possession of the semi-truck and the driver's purpose of travel. Investigator's reasonable suspicion and probable cause for drug trafficking blossomed into robust probable cause with defendant's behavior and answers. These facts all aligned closely with drug transportation tradecraft and confirmed that the semi-truck defendant was driving was associated with the drug transaction the investigators reasonably believed had just occurred.

The following facts arising during the manhunt phase of the investigation as well as defendant's answers to investigators' roadside mission-specific questioning about the semi-truck, his association to it, ownership, contents and travel plans all served to heighten, and did not dispel, probable cause for drug trafficking:

- Defendant and his passenger fled the truck, and its valuable contents, after investigator's stopped the Camry, indicating an awareness of the investigators' enforcement actions;
- Defendant was found hiding nearby, indicating an intent to distance himself from the incriminating evidence in the semi-truck;
- Defendant told investigators he was the driver of the semi-truck;
- Defendant told investigators he and his passenger worked for TR Logistics LLC, the same name as that was on the side of the semi-truck;
- Defendant told investigators he did not own the semi-truck, and that the owner was the owner of TR Logistics;
- Defendant told investigators that the suitcases in the cab contained drugs;
- Defendant said that he was driving a load of strawberries from Salem, Oregon to Chicago, Illinois;

**Government's Response to Defendant's Motion to Suppress**          **Page 14**

- Defendant told investigators that two men had put the suitcases into the truck in Los Angeles, a known narcotics trafficking hub;
- Defendant told investigators that he did not have telephone contact with the men who loaded the drugs into the semi-truck in Los Angeles;
- Defendant said that his boss in Mexico arranged for the drugs to be loaded into his truck of and that this boss did not have any affiliation with TR Logistics.

The fact that defendant answered some of investigator's questions while detained in handcuffs does not undermine the constitutionality of the stop. First, Agent Shannahan and his team already had reasonable suspicion, and probable cause, before detaining defendant. Second, investigatory detentions during traffic stops are appropriate. When conducting a traffic stop investigation, an officer may order the driver to exit the car and ask that he sit in a patrol car. *Torres-Sanchez*, 83 F.3d at 1129; *Steinman*, 130 F.4th at 562. "It is black-letter law that a trooper may do so in the interest of officer safety" "given the inordinate risk confronting an officer as he approaches a person seated in an automobile." *Steinman*, 130 F.4th at 562 (internal punctuation omitted).

Traffic stops are inherently dangerous to law enforcement. *Id.* (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977) (approaching a person in seated in an automobile presents "inordinate risk" to the police officer)). This is particularly true where Agents are engaged in enforcement operations at an unsecure rest stop along a very busy highway. These dangers are especially heightened given the valuable nature of the bulk narcotics concealed in the semi-truck. Investigators reasonably suspected that defendant was transporting bulk narcotics, and guns are a well-known tool of the drug trafficking trade. *United States v. Butcher*, 926 F.2d 811, 816 (9th Cir. 1991) (noting that "Firearms are known 'tools of the trade' of narcotics dealing because of the dangers inherent in that line of work") (citing *United States v. Simon*, 767 F.2d 524, 527 (8th Cir. 1985). It is reasonable for an officer who reasonably suspects a car is engaged in drug trafficking activity to be concerned that the car occupant(s) have ready access to a gun.

**Government's Response to Defendant's Motion to Suppress**                    **Page 15**

Agent Shannahan and the task force investigators had reasonable suspicion to believe the semi-truck defendant was driving was involved in drug trafficking before stopping the unattended truck at the rest stop. Defendant's evasive conduct and incriminating answers to investigators' mission-specific questions about the semi-truck's occupants, ownership, and recent travel history support and heighten that suspicion. The stop was not impermissibly prolonged. It was supported by reasonable suspicion and probable cause from start to finish.

**B.      Investigators' Seizures Resulted from a Lawful Search**

   **1.      *Automobile Exception***

"Under the automobile exception to the warrant requirement, police may conduct a warrantless search of a vehicle if there is probable cause to believe that the vehicle contains evidence of a crime." *United States v. Scott*, 705 F.3d 410, 417 (9th Cir. 2012). The exception is justified by the exigency created by the inherent mobility of vehicles and the relatively minimal expectation of privacy that exists regarding automobiles. *Id.*; see also *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (tracing the history of the automobile exception). It applies if a vehicle is readily mobile by the turn of an ignition key and is being used as a licensed motor vehicle subject to a range of police regulation. *Scott*, 705 F.3d at 417. And it applies even if the driver or owner has already been taken into custody or the risk of mobility has otherwise been eliminated. *Id*.

Probable cause exists when the totality of the circumstances shows a fair probability that contraband or evidence of a crime will be found in a particular place. *United States v. Steinman*, 159 F.4th at 568; *United States v. Davis*, 530 F.3d 1069, 1084 (9th Cir. 2008). Probable cause can be based in part on reasonable inferences. *Davis*, 530 F.3d at 1084. It is "not a high bar" and does not require consideration of all conceivable, relevant evidence. *Kaley v. United States*, 571

**Government's Response to Defendant's Motion to Suppress**                     **Page 16**

U.S. 320, 338 (2014). It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. *United States v. Guerrero*, 47 F.4th 984, 986 (9th Cir.), *amended on denial of reh'g*, 50 F.4th 1291 (9th Cir. 2022), and *cert. denied*, 215 L. Ed. 2d 82, 143 S. Ct. 838 (2023) (J. Gould, concurring).

The blue semi-truck was readily mobile by the turn of an ignition key and was being used as a licensed motor vehicle. Before leaving the truck, defendant had been driving it northbound on I-5. In addition, based upon the facts of the investigation, and the investigators' observations that day there was a fair probability that drugs or evidence of drug trafficking would be found in the semi-truck. As described above, these same facts supporting reasonable suspicion and probable cause that drugs or other evidence of narcotics trafficking would be found in semi-truck before investigators stopped and swept the cab of the unattended running vehicle.

Furthermore, the investigators did not seize any evidence from the initial sweep. Rather, it is undisputed that the investigators stopped their sweep after finding drugs concealed in a heavy suitcase stored in the semi-truck's sleeping compartment despite having probable cause to search the unattended mobile vehicle for evidence of drug trafficking.

Later, after detaining defendant at the rest stop, defendant admitted to having drugs in the cab of the semi-truck that he drove from California to Oregon. This followed other indicators of guilt: pulling off the highway after only traveling a short distance, leaving the semi-truck and the means to control it unattended, hiding from investigators as they stopped and swept the abandoned semi-truck, and later his post-Miranda admissions to knowingly transporting drugs. These indicators and statements add to the probable cause that the semi-truck contained bulk narcotics for all the reasons described above.

**Government's Response to Defendant's Motion to Suppress**                    **Page 17**

Defendant claims that probable cause is lacking here because investigators did not see Perez-Lopez (or defendant) in possession of drugs prior to the stop and sweep of the semi-truck. (Defendant's Motion to Suppress, ECF 71, p. 9). Defendant's argument fails to appreciate the significance of the totality of the facts and circumstances that prompted investigators to follow Perez-Lopez to his meeting with defendant that day. Specifically, defendant does not account for Perez-Lopez's communications with the informant from earlier that day as well as Perez-Lopez's agreed upon meeting with the informant set to occur later that day. These statements from a known drug trafficker led investigators to reasonably believe that Perez-Lopez would be taking possession of drugs that day.

In following Perez-Lopez, Agent Shannahan and the investigators observed a number of things that caused them to suspect defendant was involved in narcotics trafficking with Perez-Lopez. The circumstances surrounding defendant's brief meeting with Perez-Lopez (a known drug dealer whose earlier statements indicated he was about to receive a resupply of drugs) at the back of truck stop along with Agent Shannahan's training and experience allow for a reasonable conclusion that this quick meeting in a place of concealment were hallmarks of narcotics trafficking tradecraft. Defendant's oversimplification of the facts ignores the significance of the timing and circumstances surrounding the narcotics seizure from Perez-Lopez including the stop occurring just after meeting with defendant, the dog alert, the drugs concealed in Perez-Lopez's Camry and Perez-Lopez's statement about a third party putting the drugs in his Camry. Defendant ignores the significance that the semi-truck's multiple registration tags had to trained narcotics investigators, specifically a Mexico plate and a recent temporary Texas tag indicating transnational long-haul travels though areas known for narcotics trafficking,

**Government's Response to Defendant's Motion to Suppress**                    **Page 18**

Defendant claims the government lacked probable cause that the semi-truck contained evidence of narcotics trafficking because investigators did not see Perez-Lopez receive drugs from defendant that day. However, defendant fails to appreciate the constellation of the facts and observations investigators gathered in the weeks leading up to, and on the day of the stop. Moreover, the significance of these facts to a trained narcotics investigators like Agent Shannahan lend important context to what may otherwise be innocent actions. Although investigators never saw the actual hand-off of drugs between defendant and Perez-Lopez, the totality of the circumstances indicate that investigators had more than a hunch, and indeed, sufficient and compelling reasons to believe that there was a fair probability that the blue semi-truck contained evidence of narcotics trafficking. Therefore, the investigators lawfully obtained the drugs and drug evidence that they had observed during the initial sweep of semi-truck.

### 2. Investigators Lawfully Seized Evidence of Narcotics Trafficking Pursuant to the Mobile Vehicle Exception and Subsequent Search Warrant

A claim that evidence should be suppressed because of a defective warrant is "immaterial" where the evidence was lawfully seized under some other theory. *Coolidge v. New Hampshire,* 403 U.S. 443, 453 (1971). "[C]ourts across the nation have declined to suppress the fruits of searches that were conducted pursuant to a defective warrant if an exception to the warrant requirement would otherwise have justified the search. *Steinman,* 159 F. 4th at 576 (collecting cases).

That the investigators chose to apply for a warrant following the initial sweep of the semi-truck did not diminish the probable cause to search the mobile semi-truck pursuant to the automobile exception. As explained above, the evidence gathered after the sweep added to and strengthened the investigators' probable cause. Defendant rightly points out that investigators

**Government's Response to Defendant's Motion to Suppress**          **Page 19**

seized the drug evidence between 8 p.m. (when Agent Shannahan swore to the affidavit) and 8:08 p.m. (when Judge Armistead authorized the warrant). However, this does make the evidence subject to suppression because the drug evidence from the semi-truck was still lawfully seized under the automobile exception.

### 3. Investigators' Initial Sweep and Subsequent Search of the Abandoned Semi-Truck was Reasonable

Persons who abandon property lack standing to challenge a search of the abandoned the item. The Fourth Amendment protects only those areas or items in which a person has a legitimate, objectively reasonable expectation of privacy, and a defendant must demonstrate a personal, legitimate expectation of privacy to have standing. *Katz v. United States*, 389 U.S. 347 (1967); *Rakas v. Illinois*, 439 U.S. 128 (1978). Critically, the Supreme Court recognized that law enforcement officers may search abandoned property because the individual who abandons property relinquishes any cognizable privacy interest. *Abel v. United States*, 362 U.S. 217 (1960). In the Ninth Circuit, "warrantless searches of abandoned property do not violate the Fourth Amendment," and persons who voluntarily abandon property lack standing to complain of its search or seizure. *United States v. Huffhines*, 967 F.2d 314, 318 (9th Cir. 1992); *United States v. Nordling*, 804 F.2d 1466, 1469 (9th Cir. 1986).

Abandonment focuses on intent as manifested by a totality of a defendant's objective circumstances: whether, "by words, acts or other objective indications, a person has relinquished a reasonable expectation of privacy in the property at the time of the search." *Huffhines*, 967 F.2d at 316; *United States v. Baker*, 58 F.4th 1109, 1115 (9th Cir. 2023). In *Baker*, the Ninth Circuit noted two key factors that guide the

**Government's Response to Defendant's Motion to Suppress**                    **Page 20**

analysis: (1) physical relinquishment of the property itself, and (2) denial of ownership. *Nordling*, 804 F.2d at 1469; *Baker*, 58 F.4th at 1115. Here, when law enforcement agents arrived at the reststop, they encountered a semi-truck left apparently unattended, with its engine running and keys still in the ignition, The vehicle was unlocked. Defendants had already fled on foot but were apprehended a short distance away.

These facts demonstrate objective abandonment through physical relinquishment of the property at issue. By leaving the semi-truck unattended, unlocked, parked in a rest stop along a busy interstate with the keys in the ignition, and the engine running, defendant no longer had the means to control the semi-truck.

Defendant may contend that these same factors indicate an intent to return to the semi-truck entrusted to him by his employer. The government does not dispute defendant's associations to the truck through his work entitled him to some measures of privacy in the contents of the truck while he actively or constructively possessed the semi-truck. Rather, prior to his detention, defendant actions indicated an intent to distance himself from the incriminating evidence inside the semi-truck. Furthermore, defendant took no steps to assert ownership over the semi-truck during the stop, or initial sweep. By abandoning the semi-truck, and the manner in which he did so, anyone could have driven off in the semi-truck. At a minimum, these undisputed facts indicate defendant has a diminished expectation of privacy in the semi-truck, and under the totality of the circumstances, support the reasonableness of investigators' initial sweep and subsequent search of the truck.

Abandonment must be voluntary and not the product of a prior Fourth Amendment violation. Because defendants departed the truck before officers even arrived on the scene or any formal traffic stop had been initiated, the abandonment was voluntary. And because defendants

**Government's Response to Defendant's Motion to Suppress**                    **Page 21**

abandoned the vehicle before any sweep or search occurred, they retained no reasonable

expectation of privacy in it or its attached shipping container at the time of the search.

Additionally, the unattended running engine presented a public safety concern that independently

justified officers in approaching and securing the vehicle under the community caretaking

doctrine. *Cady v. Dombrowski*, 413 U.S. 433 (1973); *United States v. Cervantes*, 703 F.3d 1135

(9th Cir. 2012).

### 4.     *Good Faith Exception and Inevitable Discovery*

Evidence seized under a facially valid warrant that is later held to be invalid, may be

admitted if the executing officers act in good faith and in reasonable reliance on a search warrant.

*United States v. Leon*, 468 U.S. 897, 926 (1984). In the absence of abandonment of the detached

and neutral magisterial role, suppression is proper only where the officers were dishonest or

reckless in preparing their affidavit or could not have harbored an objectively reasonable belief

in the existence of probable cause due to a facial deficiency in the warrant. *United States v.*

*Michaelian*, 803 F.2d 1042, 1047 (9th Cir. 1986). Warrants and affidavits that are scrutinized by

multiple levels, including attorney review, add to the reasonableness of the officer's reliance

upon the warrants. *Id*. Although an affidavit may not be construed to cure a warrant's

particularity defect, it may be considered when evaluating as evidence of the officer's reasonable

reliance on the validity of the warrant, or the officer's good faith. *United States v. Luk*, 859 F.2d

667, 676–77 (9th Cir. 1988).

Not every violation of the Fourth Amendment triggers application of the exclusionary

rule. *Herring v. United States*, 555 U.S. 135, 140 (2009) (the fact that a Fourth Amendment

violation occurs "does not necessarily mean that the exclusionary rule applies;" the Supreme

Court has "repeatedly rejected the argument that exclusion is a necessary consequence of a

**Government's Response to Defendant's Motion to Suppress**                    **Page 22**

Fourth Amendment violation"). *See also Hudson v. Michigan*, 547 U.S. 586, 591 (2006) (suppression of evidence "has always been our last resort, not our first impulse"). The exclusionary rule "is not an individual right and applies only where it result[s] in appreciable deterrence." *Herring*, 555 U.S. at 141 (internal quotation marks and citations omitted).  See also *Davis v. United States*, 564 U.S. 229, 236 (2011) ("Exclusion is not a personal constitutional right, nor is it designed to redress the injury occasioned by an unconstitutional search") (internal quotation marks and citations omitted).

The exclusionary rule's "sole purpose" is "to deter future Fourth Amendment violations." *Id*. at 236-37. The rule's operation is limited to "situations in which this purpose is thought most efficaciously served." *Id*. at 237. *See also Herring*, 555 U.S. at 141 (the focus is on "the efficacy of the rule in deterring Fourth Amendment violations in the future").

"[T]he benefits of deterrence must outweigh the costs" of suppression. *Id*. Thus, even if there were a Fourth Amendment violation in this case – and there was not – this Court must balance the deterrent benefit of exclusion "against [its] substantial societal costs." *Id*. (bracketed material in original; internal quotation marks and citation omitted).  "[T]he rule's costly toll upon truth-seeking and law enforcement objectives presents a high obstacle for those urging [its] application." *Id*. at 701 (internal quotation marks and citation omitted).

Unlawfully obtained evidence should not be suppressed if it would have been inevitably discovered. *Nix v. Williams*, 467 U.S. 431 (1984). If "by following routine procedures, the police would inevitably have uncovered the evidence," then the evidence will not be suppressed despite a constitutional violation. *United States v. Ramirez-Sandoval*, 872 F.2d 1392, 1399 (9th Cir. 1989). *See also United States v. Ramirez*, 473 F.3d 1026, 1031 (9th Cir. 2007).

**Government's Response to Defendant's Motion to Suppress**                    **Page 23**

The inevitable discovery doctrine precludes suppression in this case. That doctrine, adopted by the Supreme Court in *Nix v. Williams*, 467 U.S. 431 (1984), allows introduction of illegally obtained evidence "if the government can show by a preponderance of the evidence that the tainted evidence would inevitably have been discovered through lawful means." *United States v. Ramirez-Sandoval*, 872 F.2d 1392, 1396 (9th Cir. 1989) (citing *Nix*, 467 U.S. at 444). The inevitable discovery doctrine requires that "the fact or likelihood that makes the discovery inevitable arise from circumstances other than those disclosed by the illegal search itself." *United States v. Boatwright*, 822 F.2d 862, 864–65 (9th Cir. 1987).

The government anticipates Agent Shannahan will testify to the totality of the circumstances surrounding the search in this case. He will describe the investigators' safety concerns about the stop including risks of potential violence involving investigators prolonged wait for the warrant at the rest stop with a large vehicle containing an extremely valuable quantity of illegal drugs.

These officer safety concerns were not generalized concerns, but rather particularized to the circumstances of this stop. The investigators were with the truck at a location of defendant's choosing. Defendant had time to alert other DTO members of the police activity before he was detained. The semi-truck was stopped along a very busy highway, as darkness was falling with the aforementioned valuable cargo. Investigators had reasons to believe that Perez-Lopez and defendant were likely coordinating with other members of this Mexico-based drug trafficking organization. Investigators had reasons to believe that DTO members were aware of the investigators' enforcement operations that day, and that the truck was stopped at a location chosen by defendant– not the police. Investigators were reasonably concerned about their safety

**Government's Response to Defendant's Motion to Suppress**                    **Page 24**

when they searched the truck in the minutes after Agent Shannahan advised the team that the warrant had been sworn.

Furthermore, the fact that the officers waited for several hours indicates their good faith intent to search the truck pursuant to a warrant. Agent Shannahan will testify that following the initial sweep of the cab, he communicated to his team that they were going to apply for a warrant to search the truck. Agent Shannahan conferred with an Assistant U.S. Attorney and prepared an application to search the truck. Agent Shannahan will testify that the rest stop scene was not secure, and that investigators had serious safety concerns given the prolonged time they were exposed in the unsecure environment. Agent Shannahan will testify that the team searched the truck after he communicated to the team that he had completed the warrant application with Judge Armistead, and that he expected the warrant was going to be imminently authorized. It is undisputed that the search warrant was ultimately authorized approximately 10 minutes after Agent Shannahan swore to the affidavit over the telephone. The fact that the agents waited hours before searching indicates their good faith intent to proceed pursuant to a lawful warrant that was inevitably issued. Inevitably, the drugs would have been discovered.

## III.    RESPONSE TO DEFENDANT'S MOTION FOR A FRANKS HEARING

### A.    Defendant's Claimed Omissions Are Not Exculpatory.

There is "a presumption of validity with respect to the affidavit supporting the search warrant." *Franks v. Delaware*, 438 U.S. 154, 171 (1978); *United States v. Meek*, 366 F.3d 705, 716 (9th Cir. 2004). A defendant who challenges the validity of an affidavit is entitled to an evidentiary hearing only if he makes "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant

**Government's Response to Defendant's Motion to Suppress**                    **Page 25**

in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155-56 (emphasis added).

To sustain a Franks challenge relying on an omissions theory, defendant must "(1) make a substantial preliminary showing that the affidavit contained a misleading omission that resulted from deliberate or reckless disregard of the truth, and (2) demonstrate that had there been no omission, the affidavit would have been insufficient to establish probable cause." *United States v. Schaefer*, 2019 WL 267711, *9 (D. Or. Jan. 17, 2019), citing *United States v. Kyllo*, 37 F.3d 526, 529 (9th Cir. 1994), *rev'd on other grounds*, 530 U.S. 1305 (2001) and *United States v. Flyer*, 633 F.3d 911, 916 (9th Cir. 2011) (internal punctuation omitted).

"However, the omission rule does not require an affiant to provide general information about every possible theory, no matter how unlikely, that would controvert the affiant's good-faith belief that probable cause existed for the search." *United States v. Craighead*, 539 F.3d 1073, 1081 (9th Cir. 2008). "The movant bears the burden of proof and must make a substantial showing to support both elements." *United States v. Chavez-Miranda*, 306 F.3d 973, 979 (9th Cir. 2002). The fact that an affiant may not mention a detail, even if that detail is arguably exculpatory, will not justify a Franks hearing unless the omission actually undermines probable cause. For example, an affiant who failed to mention a defendant's statement that he had "quit" drug trafficking had no effect on the magistrate's probable cause finding given other information linking defendant to a recent drug sale. *United States v. Foster*, 711 F.2d 871, 879 (9th Cir. 1983); *see also Flyer*, 633 F.3d at 917 (statement about investigator's inability to download multiple child pornography files from defendant's computer did not need to be included in affidavit when affidavit already contained sufficient information for probable cause).

**Government's Response to Defendant's Motion to Suppress**          **Page 26**

The defendant's attack "must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Franks*, 438 U.S. at 171. "Allegations of negligence or innocent mistake are insufficient." *Id.* So are speculative allegations. *United States v. Lingenfelter*, 997 F.2d 632, 640 (9th Cir. 1993). Rather, there must be "allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Franks*, 438 U.S. at 171. "Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Id*. The absence of an affidavit or sworn statement offering proof of deliberate or reckless falsehood "is enough in itself" to defeat a demand for a Franks hearing. *United States v. Ruddell*, 71 F.3d 331, 334 (9th Cir. 1995). *See also United States v. Furrow*, 229 F.3d 805, 815 (9th Cir. 2000) (where the defendant filed no affidavits or other offers of proof and did not explain his failure to do so, his promise to present evidence of reckless disregard for the truth at a Franks hearing was not sufficient to warrant holding one), *overruled on other grounds by United States v. Johnson*, 256 F.3d 895 (9th Cir. 2001) (en banc); *Schaefer*, 2019 WL 267711, 10 (noting defendant's Franks motion could be denied because he failed to provide a detailed offer of proof).

Five requirements that must be met before a defendant is entitled to a Franks hearing:

(1) the defendant must allege specifically which portions of the warrant affidavit are claimed to be false;

(2) the defendant must contend that the false statements or omissions were deliberately or recklessly made;

(3) a detailed offer of proof, including affidavits, must accompany the allegations;

(4) the veracity of only the affiant must be challenged; and

(5) the challenged statements must be necessary to find probable cause.

**Government's Response to Defendant's Motion to Suppress**          **Page 27**

*United States v. DiCesare*, 765 F.2d 890, 894-95 (9th Cir.), *amended*, 777 F.2d 543 (1985) (citation omitted). *See also Craighead*, 539 F.3d at 1080 ("To justify a hearing, a defendant must make specific allegations, allege a deliberate falsehood or reckless disregard for the truth, and accompany such a claim with a detailed offer of proof"). "[T]he Court in Franks placed special emphasis on the strict requirement of proof, finding that '[t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.'" *United States v. Hammett*, 236 F.3d 1054, 1058 (9th Cir. 2001) (emphasis in original) (finding "record contains nothing to suggest that the misstatement in the warrant affidavit . . . was made intentionally or recklessly"), citing *Franks*, 438 U.S. at 171.

Defendant identifies and alleges two material false statements. First, that Agent Shannahan misled the magistrate by misstating the timing of the Perez-Lopez stop relative to the semi-truck stopping at the rest stop. Second, that Agent Shannahan omitted the fact that the investigators were unlawfully searching the semi-truck when they discovered the wrapped kilogram packages inside the suitcases during their initial sweep. (Motion, p.13). These claims are meritless.

Defendant's first claim asserts that Agent Shannahan's statement misrepresents the actual times involved when compared against the metadata from images recorded that day. Agent Shannahan's affidavit accurately captures the sequence of events and the general timing involved. Adding in the specific times for the Perez-Lopez traffic stop would still put that event before, and in close temporal proximity to, defendant departing the truck stop and stopping again stopped at the rest stop. Accordingly, these additional facts are not material and would not alter the probable cause determination because the sequence of events are unchanged.

**Government's Response to Defendant's Motion to Suppress**                **Page 28**

As to defendant's second claim, Agent Shannahan informed the magistrate, "This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter." (Search Warrant Application, ¶ 4). The affidavit also describes that the agents had swept interior of the semi-truck's cab. (Search Warrant Application, ¶ 21).

As explained above, the government contends that the investigators lawfully swept and searched the semi-truck pursuant to the automobile exception. Agent Shannahan did not hide the fact that the investigators cleared and swept the cab of the truck, indeed, he expressly included that fact in his affidavit. That Agent Shannahan omitted the fact about discovering bulk narcotics during the lawful sweep is not exculpatory. Rather, this omission is highly incriminating and if included, would add to the probable cause for the search.

## B. Defendant's Challenged Omissions Are Not Material to the Probable Cause Determination.

Even if the affiant omitted accurate information about his investigation, Franks does not require a hearing if the omissions were immaterial to probable cause. If the reviewing court determines that a Franks violation has occurred, the information that was omitted is inserted back into the affidavit, and if there is still probable cause, the warrant is considered valid. However, if probable cause is found to be lacking, then the good faith doctrine does not apply. *United States v. Leon*, 468 U.S. 897, 923 (1984). The omissions need to be material *See United States v. Vasquez*, 654 F.3d 880 (9th Cir. 2011) (identifying suspect as gang president, not treasurer, was not a material misstatement). To be material a fact needs to be necessary to the finding of probable cause. An affidavit does not need to include information about every possible theory or hypothetical explanations. *Craighead*, 539 F.3d at 1081.

**Government's Response to Defendant's Motion to Suppress**                    **Page 29**

Had Agent Shannahan included the details about the discovery of drugs in the suitcases in his application, it would have strengthened the probable cause. The omission of incriminating facts is not material because it would not change the magistrate's determination that there was a "fair probability" that the semi-truck contained evidence of narcotics trafficking.

## IV.    CONCLUSION

For the forgoing reasons, the defendant's motion to suppress should be denied.

Dated: July 2, 2026

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Paul T. Maloney*
PAUL T. MALONEY, OSB #013366
Assistant United States Attorney

**Government's Response to Defendant's Motion to Suppress**                    **Page 30**